1  JOHN M. SORICH (CA Bar No. 125223)
   jsorich@adorno.com
2  S. CHRISTOPHER YOO (CA Bar No. 169442)
   cyoo@adorno.com
3  ADORNO YOSS ALVARADO & SMITH
   A Professional Corporation
4  1 MacArthur Place, Suite 200
   Santa Ana, California 92707
5  Tel:  (714) 852-6800
   Fax: (714) 852-6899
6
   Attorneys for Defendants
7  DEUTSCHE BANK NATIONAL TRUST COMPANY, and
   CHASE HOME FINANCE LLC
8

9                 UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

12 JOSEPHINE CLEVELAND and JAY          **CASE NO.:** 08CV0802JM-NLS
   CLEVELAND
13                                       **JUDGE:**      Hon. Jeffrey T. Miller
              Plaintiffs,
14                                       **REQUEST FOR JUDICIAL NOTICE IN**
   v.                                    **SUPPORT OF MOTION TO DISMISS**
15                                       **"THIRD AMENDED COMPLAINT"**
   DEUTSCHE BANK NATIONAL TRUST
16 COMPANY, TRUSTEE FOR NEW CENTURY,     **DATE:**  October 17, 2008
   NEW CENTURY MORTGAGE CORP.,           **TIME:**  1:30 p.m.
17 CHASE HOME FINANCE LLC,               **DEPT:**  "16"
                                         **NO ORAL ARGUMENT REQUIRED**
18            Defendant.
                                         **Action Filed:** 5/1/08
19

20

21 **TO PLAINTIFF AND ALL INTERESTED PARTIES HEREIN:**

22        Defendants Chase Home Finance LLC ("Chase"), and Deutsche Bank National Trust

23 Company, trustee for New Century ("Deutsche" and collectively "Defendants"), hereby requests

24 that, in connection with the Motion to Dismiss the "Third Amended Complaint"[1] of plaintiffs

25 Josephine D. Cleveland and Jay Cleveland ("Plaintiffs") that this court take judicial notice, pursuant to

26 _____

27 [1] Plaintiffs erroneously identify their complaint as a "Third Amended Complaint" when it is really a
   First Amended Complaint. *See*, Pacer Docket.

28

(left margin) ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

Federal Rules of Evidence §§ 201(b), 201(c), and 201(d), of the following documents:

1.      A true and correct copy of the deed of trust ("DOT") encumbering the property located at 908 Paradise Knoll Court, National City, California ("Subject Property") that was recorded with Official Records San Diego County on October 28, 2005 as instrument number 2005-0940098 as Exhibit 1.

2.      A true and correct copy of the Corporate Assignment of Deed of Trust that was recorded with Official Records San Diego County on October 17, 2006 as instrument number 2006-0735147, as Exhibit 2.

3.      A true and correct copy of the Substitution of Trustee that was recorded with Official Records San Diego County on October 18, 2006 as instrument number 2006-0738214, as Exhibit 3.

4.      A true and correct copy of the Notice of Default and Election to Sell Under Deed of Trust ("NOD") that was recorded with Official Records San Diego County on August 29, 2007 as instrument number 2007-057211, as Exhibit 4.

5.      A true and correct copy of the Substitution of Trustee recorded with Official Records San Diego County on October 19, 2007 as instrument number 2007-0671224, in favor of NDEx West, LLC ("NDEX"), as Exhibit 5.

6.      A true and correct copy of the Notice of Trustee's Sale ("NOT") recorded with Official Records San Diego County as instrument number 2008-0024810 on January 18, 2008, as Exhibit 6.

7.      A true and correct copy of the Assignment of Deed of Trust recorded with Official Records San Diego County on February 20, 2009 as instrument number 2008-0084714, as Exhibit 7.

8.      A true and correct copy of the Trustee's Deed Upon Sale recorded on March 4, 2008 with Official Records County of San Diego as instrument number 2008-0111362, as Exhibit 8.

9.      True and copies of a Deed of Trust, a Quitclaim Deed, and Declaration of Acceptance recorded by Plaintiff with Official Records San Diego County, as Exhibit 9.

///

///

1061565.2                                                                                    08CV0802JM-NLS

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

10.    A true and correct copy of an order granting a motion for summary judgment in favor of Deutsche in the unlawful detainer action *Deutsche v. Cleveland,* San Diego County Superior Court case number 37-2008-00030649-CL-UD-SC, as Exhibit 10.

DATED:  September 10, 2008                    ADORNO YOSS ALVARADO & SMITH
                                             A Professional Corporation


                                             By:__/s/ S. Christopher Yoo_____
                                                JOHN M. SORICH
                                                S. CHRISTOPHER YOO
                                                Attorneys for Defendants
                                                DEUTSCHE BANK NATIONAL TRUST
                                                COMPANY, and CHASE HOME FINANCE
                                                LLC

1061565.2                                                             08CV0802JM-NLS

# EXHIBIT 1

Recording Requested By:
Alliance Title - San Diego 20467

Recording Requested By:
New Century Mortgage
Corporation
Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

DOC # 2005-0940098

OCT 28, 2005        3:18 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        66.00
PAGES:        20        DA:        1

2005-0940098

*15117911*

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  October 22, 2005
together with all Riders to this document.
(B) "Borrower" is JOSEPHINE D CLEVELAND, A Married Woman as Her Sole and
Separate Property

Borrower's address is 908 PARADISE KNOLL CT , National City, CA 91950
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

1004452050

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

-6(CA) (0207)
Page 1 of 15        Initials: JDC

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is ALLIANCE TITLE

(E) "Note" means the promissory note signed by Borrower and dated October 22, 2005
The Note states that Borrower owes Lender FIVE HUNDRED FORTY-SEVEN THOUSAND NINE
HUNDRED SIXTY AND 00/100                                                   Dollars
(U.S. $547,960.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 11/01/2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | Prepayment Rider |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: _JDC_                          1004452050

20469

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County of San Diego :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 557-220-59                                    which currently has the address of
908 PARADISE KNOLL COURT                                                              [Street]
National City                              [City], California 91950-          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: _JDC_                                                 1004452050

VMP®-6(CA) (0207)                    Page 3 of 15                    Form 3005  1/01

20470

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _JDC_        1004452050

20471

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: 

1004452050

20472

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _JPC_    1004452050

-6(CA) (0207)                     Page 7 of 15                              Form 3005   1/01

20474

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _JDC_

1004452050

20475

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _JPC_

1004452050

20476

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

20477

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials _JDe_

1004452050

VMP®-6(CA) (0207)                    Page 11 of 15                    Form 3005  1/01

20478

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: JDC    1004452050

-6(CA) (0207)    Page 12 of 15    Form 3005  1/01

20479

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _Joe_

1004452050

-6(CA) (0207)

Page 13 of 15

Form 3005   1/01

20480

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Josephine D. Cleveland*  _____ (Seal)
                                   JOSEPHINE D CLEVELAND        -Borrower


_____          _____ (Seal)
                                                               -Borrower


_____ (Seal)         _____ (Seal)
            -Borrower                                          -Borrower


_____ (Seal)         _____ (Seal)
            -Borrower                                          -Borrower


_____ (Seal)         _____ (Seal)
            -Borrower                                          -Borrower


1004452050

20481

State of California
County of *San Diego*                              } ss.

On *October 22, 2005* before me, *MARIA LINDA V. TUYAY, NOTARY PUBLIC*

personally appeared

*JOSEPHINE D. CLEVELAND*                    , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed
to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~
authorized capacity(~~ies~~), and that by ~~his~~/her/~~their~~ signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

MARIA LINDA V. TUYAY
Commission # 1539873
Notary Public - California
San Diego County
My Comm. Expires Dec 31, 2008

Initials: *JDC*                1004452050

-6(CA) (0207)              Page 15 of 15              Form 3005   1/01

20482

EXHIBIT "A"

LEGAL DESCRIPTION

All that Certain real property situated in the City of National City, County of San Diego, State of California described as follows:

LOT 5 OF PARADISE KNOLL, IN THE CITY OF NATIONAL CITY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14269, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 11, 2001.

also known as 908 Paradise Knoll Court, National City, California 91950

APN: 557-220-59

20483

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)
## 2 YEAR RATE LOCK, 5 YEAR INTEREST ONLY PERIOD

THIS ADJUSTABLE RATE RIDER is made this **22nd**     day of **October, 2005**           ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to
**New Century Mortgage Corporation**
("Lender") of the same date and covering the property described in the Security Instrument and located at:

**908 PARADISE KNOLL COURT, National City, CA 91950-**
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE
BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of            **7.600** %. The Note provides for
changes in the interest rate and monthly payments as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates
The interest rate I will pay may change on the first day of **November, 2007**                     ,
and on the same day of every 6th month thereafter. Each date on which my interest rate could change is
called an "Interest Rate Change Date."

### (B)  The Index
Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a
margin. The "Index" is the average of interbank offered rates for six-month dollar deposits in the London
market ("LIBOR"), as published in *The Wall Street Journal* "Money Rates" Table. The most recent Index
figure available as of the first business day of the month immediately preceding the month in which the
Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Rider (Multistate)
RE-441   (051005)                          Page 1 of 3                          **1004452050**

20484

### (C)  Calculation of Changes

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five And Ninety-five Hundredth(s)**          percentage points (          **5.950** %) to the Current Index. The Note Holder will then round this figure to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Interest Rate Change Date.

> **(i)  Interest-Only Period.** The "Interest-only Period" is the period from the date of this Note through  **November 1, 2010**, called the "Amortization Start Date." During the Interest-only Period, my monthly payments will only pay the interest I owe. During the Interest-only Period, the Note Holder will calculate the amount of my monthly payment to be one-twelfth (1/12th) of one (1) year's interest at the then applicable interest rate. The result of this calculation will be the amount of my monthly payment until changed.

> **(ii) Amortization Period.** Beginning on the Amortization Date my monthly payments will include principal. Starting on the Amortization Start Date and continuing until the Maturity Date, on each Interest Rate Change Date the Note Holder will calculate the amount of the monthly payment that would be sufficient to fully repay the remaining unpaid principal in equal monthly payments by the Maturity Date at the new interest rate, assuming, for purposes of each calculation, that the interest rate did not change again. The result of this calculation will be the new amount of my monthly payment until the next Interest Rate Change Date.

### (D)  Limit on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.100** % or less than **7.600** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month. My interest rate will never be greater than **14.600** % or less than **7.600** %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment at least 25 days before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

## 11.  GOVERNING LAW - SECURED NOTE

The Note is governed by federal law and the law of the jurisdiction in which the property encumbered by the Security Instrument (as defined below) is located. In addition to the protections given to the Note Holder under the Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under the Note. Some of those conditions are described as follows:

NCMC
Fixed/ ARM Six Month LIBOR
Interest Only Rider (Multistate)
RE-441   (051005)

Page 2 of 3

1004452050

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER.**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____         _____
JOSEPHINE D CLEVELAND        -Borrower                                    -Borrower


_____         _____
                             -Borrower                                    -Borrower


_____         _____
                             -Borrower                                    -Borrower


_____         _____
                             -Borrower                                    -Borrower


*(Sign Original Only)*

20486

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this **22nd**        day of **October**        **2005**        , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                           (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**5. BORROWERS RIGHT TO PREPAY**

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within **2** year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Josephine A. Cleveland_                                    _____

JOSEPHINE D CLEVELAND

<br/>

_____                           _____

<br/>

_____                           _____

<br/>

_____                           _____

NCMC
Prepay Rider - ARM (Multistate)
RE-103   (020800)                        Page 1 of 1

**1004452050**

# EXHIBIT 2



FIRST AMERICAN TITLE

DOC # 2006-0735147

Recording Requested By:
CHASE HOME FINANCE LLC

When Recorded Return To:

Daisy Castillano
CHASE HOME FINANCE LLC
10790 Rancho Bernardo Rd
San Diego, CA 92127

**2729**

2006901920846
3862279

OCT 17, 2006    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        12.00
PAGES:        2        DA:        1



**2006-0735147**

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**San Diego, California**
**SELLER'S SERVICING #:21906318 "CLEVELAND"**
**SELLER'S LENDER ID#: 625**

Prepared By:  DAISY CASTILLANO,  CHASE HOME FINANCE LLC 10790 RANCHO BERNARDO RD, SAN DIEGO, CA 92127
800-548-7912

For Value Received, NEW CENTURY MORTGAGE CORPORATION hereby grants, assigns and tranfers to
DEUTSCHE BANK NATIONAL TRUST COMPANY,TRUSTEE at _____
_____ all beneficial interest under that certain Deed
of Trust dated 10/22/2005 , in the amount of $547,960.00, executed by JOSEPHINE D CLEVELAND, A MARRIED
WOMAN AS HER SOLE AND SEPARATE PROPERTY to NEW CENTURY MORTGAGE CORPORATION and
Recorded:  10/28/2005  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2005-0940098 in San Diego,
California

 Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

NEW CENTURY MORTGAGE CORPORATION
On  9/25/06

_Alfred Vandermaele_
A.V.P Shipping Manager

STATE OF _____
COUNTY OF _____

On _____ before me, _____ , a Notary Public in and for
_____ in the State of _____ , personally appeared
_____ , personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____

Notary Expires:    /    /

(This area for notarial seal)

*MZ*MZCHCA*09/11/2006 02:45:45 PM* CHCA01CHCAA00000000000000000550184* CASAN D* 21906318 CASTATE_TRUST_ASSIGN_ASSN *MZ*MZCHCA*

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF ORANGE

On **September 25, 2006** before me **Erika Reyes**, A Notary Public in and for Orange County and the State of California, personally appeared **Alfred Vandermade, A.V.P./ Shipping Manager**, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal

ERIKA REYES
Comm. #1455401
NOTARY PUBLIC - CALIFORNIA
County of Orange
My Comm. Expires Dec. 9, 2007

Signature of Notary Public

**Erika Reyes
COMMISSION # 1455401
COMMISSION EXPIRES:
December 9,2007**

**EXHIBIT 3**

Requested and Prepared by:
**FIRST AMERICAN TITLE INSURANCE
COMPANY**

When Recorded Mail To:
**LOANSTAR MORTGAGEE SERVICES, L.L.C.**
**P.O. BOX 9013**
**ADDISON, TEXAS 75001-9013**

*F8*
*3P*

**3822**

DOC # 2006-0738214



OCT 18, 2006        8:00 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        13.00
PAGES:        3

2006-0738214

Space above this line for Recorder's use only

TS No. :    20069019203646
TSG No.:    3062279

## SUBSTITUTION OF TRUSTEE

**JOSEPHINE D CLEVELAND, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

was the original Trustor,                    **ALLIANCE TITLE**
was the original Trustee, and

### NEW CENTURY MORTGAGE CORPORATION

was the original Beneficiary under that certain Deed of Trust dated    **10/22/2005**    and recorded on  **10/28/2005**
as Instrument No.    **2005-0940098**    , in Book            , Page            , and  re-recorded
as Instrument No.            of Official Records of    **SAN DIEGO**

.County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and
instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitute, **LOANSTAR MORTGAGEE SERVICES,
L.L.C.** WHOSE ADDRESS IS: P.O. BOX 9013, ADDISON, TX 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the
singular number includes the plural.

LS129 - 10/97 (2/16/05)

SUBSTITUTION OF TRUSTEE - PAGE 2          **3823**

TS No. :   20069019203646                                          California
TSG No. :  3062279
Loan No.:  ****6318/CLEVELAND

DEUTSCHE BANK NATIONAL TRUST COMPANY,
TRUSTEE

BY CHASE HOME FINANCE LLC
AS ATTORNEY-IN-FACT

Date:     SEP 7   2006

Georgia L. King
Assistant Vice President

State of     California        )
             San Diego        §
County of                     )

On  SEP 7   2006   before me,   **ANTONIO PEREZ**                 Notary Public, personally appeared
            Georgia L. King                    personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____          (Seal)

ANTONIO PEREZ
COMM. #1682310
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires July 18, 2010

LS132 - 10/05 (SOT - Crystal Report)

# AFFIDAVIT

## 3824

TS NUMBER:  20069019203646

TRUSTOR:   **JOSEPHINE D CLEVELAND, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**

I, **DeeAnn Gregory**, Trustee Sale Officer, declare:  That I am an officer, agent or employee of LoanStar Mortgagee Services, L.L.C. whose address is P.O. Box 9013, Addison, Texas 75001-9013.

A copy of the attached substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924 (b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: ____10-10-06____

By: _____
**DeeAnn Gregory**
Declarant

LS138 - 10/97 (05/07/2002 - 2000)

**EXHIBIT 4**



Recording requested by:
**NORTH AMERICAN TITLE COMPANY -**
California

When Recorded Mail To:
**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**AUG 29, 2007      8:00 AM**
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:          12.00
PAGES:          2          DA:     1

**2007-0572511**

**210**

DFF20070161904345

Space above this line for Recorder's use only



Trustee Sale No. : 20070161904345          Title Order No.: 1145041

**IMPORTANT NOTICE**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$29,130.86 as of 8/28/2007** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**211**

Trustee Sale No. : 20070161904345          Title Order No.: 1145041

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CHASE HOME FINANCE, LLC, SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION**
c/o NDEx West, LLC
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated **10/22/2005**, executed by **JOSEPHINE D CLEVELAND A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure obligations in favor of **NEW CENTURY MORTGAGE CORPORATION**, as Beneficiary **Recorded on 10/28/2005 as Instrument No. 2005-0940098** of official records in the Office of the Recorder of **SAN DIEGO** County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of **$547,960.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 3/1/2007 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 8/28/2007

NDEx West, LLC as Agent for Beneficiary
By: NORTH AMERICAN TITLE COMPANY - California, authorized agent

By: _____
THERESA CARSON.

**EXHIBIT 5**

2538

2007-0671224

OCT 19, 2007    8:00 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:     10.00

**PAGES:** 2

2007-0671224

Recording requested by:
**NORTH AMERICAN TITLE COMPANY -**
California

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013



SUB20070161904345

Space above this line for Recorder's use only

Trustee Sale No. : 20070161904345          Title Order No.: 1145041

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOSEPHINE D CLEVELAND A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, ALLIANCE TITLE was the original Trustee, and NEW CENTURY MORTGAGE CORPORATION was the original Beneficiary Recorded on 10/28/2005 as Instrument No. 2005-0940098 of official records in the Office of the Recorder of SAN DIEGO County, California, as more fully described on said Deed of Trust.; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes, NDEx West, L.L.C., WHOSE ADDRESS IS:    15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:    OCT 0 4 2007

DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE
FOR NEW CENTURY

Susana Morales

State of _____California_____ }
County of _____San Diego_____ }

Vice President

On    OCT 0 4 2007    before    me,    **Julia Poindexter**    Notary    Public,    personally ·    appeared
_____Susana Morales_____    personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____    (Seal)

My commission expires: _____



JULIA POINDEXTER
COMM. #1736447
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Apr. 3, 2011

NDEx West, L.L.C
15000 Surveyor Boulevard Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

Case 3:08-cv-00802-JM-NLS   Document 34   Filed 09/10/2008   Page 37 of 64

2539

# AFFIDAVIT

**TRUSTEE'S SALE NUMBER:**   20070161904345

**I,** Randy Middleton, **the undersigned, a United States Citizen declare that:**

**I am an employee, over the age of eighteen years, of**

NDEx West, L.L.C., and/or NDEX,

**whose business address is:**

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

**In compliance with Section 2934a(b) of the Civil Code of the State of California, Notice has been given to the prior trustee then of record, that NDEx West, L.L.C. has been substituted as trustee under the Deed of Trust described in the attached copy of Substitution of Trustee and a copy of said Substitution of Trustee has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.**

**NDEx West, L.L.C., and/or NDEX**

_____           _____October 8, 2007_____
Randy Middleton                                             DATED
(Declarant)

State of      TEXAS        }
County of   DALLAS       }


On  October 8, 2007 before me,  Patrick De Jesus Notary Public, personally appeared Randy Middleton personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

PATRICK DE JESUS
Notary Public
State of Texas
My Comm. Exp. 07-02-2011



SBC20070161904345

# EXHIBIT 6



Recording requested by:
NORTH AMERICAN TITLE COMPANY –
California

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852                    **1234**

JAN 18, 2008     8:00 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:           9.00

**PAGES:**                    1



NOTS20070161904345

Space above this line for Recorder's use only

Trustee Sale No. : 20070161904345     Title Order No.: 1145041 ✓     FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 10/22/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEx West, LLC, as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 10/28/2005 as Instrument No.** 2005-0940098 of official records in the office of the County Recorder of **SAN DIEGO** County, State of CALIFORNIA.

EXECUTED BY:     JOSEPHINE D CLEVELAND A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:     02/05/2008     TIME OF SALE:     10:00 A.M.
PLACE OF SALE:     AT THE ENTRANCE TO THE EAST COUNTY REGIONAL CENTER BY STATUE, 250 E. MAIN STREET, EL CAJON, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
908 PARADISE KNOLL COURT, NATIONAL CITY, CALIFORNIA 91950
APN#:     557-220-59

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $569,363.31. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLICATION
17501 IRVINE BLVD., SUITE ONE
TUSTIN, CA 92780
714-573-1965
www.priorityposting.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C as Authorized Agent

_____     Dated: 01/10/2008

BY: Jesus Angulo

**EXHIBIT 7**

DOC # 2008-0084714

FEB 20, 2008    8:00 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J SMITH, COUNTY RECORDER
FEES:        17.00
                              DA        1

**PAGES:    3**



Recording requested by:
**NORTH AMERICAN TITLE COMPANY -**
California

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

**1985**

L # 21906318
ASSG20070161904345

Space above this line for Recorder's use only

Trustee Sale No. : 20070161904345    Title Order No.: 1145041 ✓

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE FOR NEW CENTURY all beneficial interest under that certain Deed of Trust dated **10/22/2005**, executed by **JOSEPHINE D CLEVELAND A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor to ALLIANCE TITLE, Trustee, and **Recorded on 10/28/2005 as Instrument No. 2005-0940098** of Official Records in the County Recorder's office of **SAN DIEGO** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

FEB 0 7 2008

DEUTSCHE BANK NATIONAL TRUST
COMPANY, TRUSTEE

Clayton Scherf    **Vice President**

CAASGNDOT.rpt - (01/25/08) / Ver-12

Page 1 of 2

**1986**

State of _____California_____ }

County of _____San Diego_____ }

On ___FEB 0 7 2008___ before me,      **K. SITAKET**     ,
Notary Public, personally appeared _____Clayton Scherf_____ who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

(If signed and notarized in California):

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission expires: _____JUN 2 2 2011_____

K. SITAKET
COMM. #1752486
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Jun. 22, 2011

CAASGNDOT.rpt - (01/25/08) / Ver-12

Page 2 of 2

3

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

## 1987

**State of California**

          }ss

**County of San Diego**

On    FEB 0 7 2008    before me,     *K. SITAKET*    , *Notary Public,*
*personally appeared*    *Clayton Scherf*   ,
*proved to me on the basis of satisfactory evidence to be the person(s) whose*
*names(s) is/are subscribed to the within instrument and acknowledged to me that*
*he/she/they executed the same in his/her/their authorized capacity(ies), and that by*
*his/her/their signature(s) on the instrument the person(s), or the entity upon behalf*
*of which the person(s) acted, executed the instrument.*

*I certify under penalty of perjury under laws of the State of California that the*
*foregoing paragraph is true and correct.*

```
K. SITAKET
COMM. #1752486
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Jun. 22, 2011
```

*Notary Seal*

WITNESS my hand and official seal.

Signature: _____

Printed Name: _____ K. SITAKET _____

---------------------------------**OPTIONAL**-----------------------------------

**Description of Attached Document**

Title or Type of Document: _____

Loan or Case Number: _____

Document Date: _____

**Capacity(ies) Claimed by Signer**

Signer(s) Name: _____

Capacity: _____

Signer is representing: _____

**EXHIBIT 8**



Recording requested by:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

When Recorded Mail to and Mail Tax Statement to:
DEUTSCHE BANK NATIONAL TRUST .et al
c/o CHASE HOME FINANCE, LLC, SUCCE .et al
10790 RANCHO BERNARDO ROAD
SAN DIEGO, CA  92127

**2404**



NORTH AMERICAN TITLE CO.

TDUS20070161904345

DOC # 2008-0111362

MAR 04, 2008    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        12.00
OC:          NA

**PAGES:        2**



---

Space above this line for Recorder's use only

Trustee Sale No. : 20070161904345        Title Order No.: 1145041

# TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:
1) The Grantee herein WAS the foreclosing beneficiary
2) The amount of the unpaid debt together with cost was        $614,019.46
3) The amount paid by the grantee at the trustee sale was        $614,019.46
4) The documentary transfer tax is N/A
5) Said property is in the city of  NATIONAL CITY
6) APN# 557-220-59

NDEX West, L.L.C. , as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

**DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE FOR NEW CENTURY**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of  SAN DIEGO, State of California, described as follows:

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, AND IS DESCRIBED AS FOLLOWS:

LOT 5 OF PARADISE KNOLL, IN THE CITY OF NATIONAL CITY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 14269, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 11, 2001.

ASSESSORS PARCEL NUMBER: 557-220-59

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated  10/22/2005 and executed by  JOSEPHINE D CLEVELAND A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY Trustor(s),  and  Recorded on 10/28/2005 as Instrument No. 2005-0940098  of official records of SAN DIEGO County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein

2

Trustee Sale No. : 20070161904345   Title Order No. : 1145041

described property at public auction on 02/19/2008. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $614,019.46 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

DATED: 02/28/2008

2405

NDEx West, L.L.C., as Trustee

_____ Authorized Agent

**Ric Juarez**

2/29/08
DATED

State of    TEXAS
County of    DALLAS }

On 2/29/08 before me, **Ric Juarez** personally appeared **Kellie C. Boswell** Notary Public, personally appeared personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _Kellie C. Boswell_ (Seal)

My commission expires: 9/19/2010

KELLIE C BOSWELL
My Commission Expires
September 19, 2010

**EXHIBIT 9**

RECORDING REQUESTED BY
KING STAHLMAN BAIL BONDS
1140 Union Street
San Diego, CA 92101
(619) 232-7127
AND WHEN RECORDED MAIL TO
KING STAHLMAN BAIL BONDS
1140 Union Street
San Diego, CA 92101
(619) 232-7127

**11738**

JUL 24, 2007    3:58 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    14.00
PAGES:    2    DA:    1

2007-0495570

# DEED OF TRUST

This Deed of Trust, Made this ___6___ day of ___April___ _____, 2007.
Between ___Josephine D. Cleveland___, herein called TRUSTOR,
MICHAEL HARDWICK herein called TRUSTEE, and GEORGE STAHLMAN, herein called BENEFICIARY WITNESSETH: That TRUSTOR hereby GRANTS
to TRUSTEE, IN TRUST, WITH POWER OF SALE, all that property in the County of ___San Diego___, State of California,

described as:

Lot ___5___ Block _____ Tract ___14269___ APN ___557-220-59-00___

as per map _____ recorded in Book _____ Page _____ of Maps, Miscellaneous Records.
In the office of the County Recorded of ___San Diego___ County.
Site ___908 Paradise Knoll ct National City CA. 91950___
Legal Description ___LOT 5___

FOR THE PURPOSE OF SECURING payment to the said Beneficiary, of the monies due to and of all losses, damages, expenditures and liability suffered, sustained, made or incurred by GEORGE STAHLMAN, hereinafter called the Surety or Beneficiary (and as more fully set forth and described in a certain indemnity agreement, which agreement is made a part hereof by reference as though herein fully set forth) on account of, growing out of, or resulting from the execution of a certain ___Say Cleveland___ _____
bond on behalf of _____ in the matter of
___The People of the State of Calif___ vs ___Say Cleveland___ _____ and
for which amounts and the matters set forth in the said indemnity agreement, the presents are security (Bond No. ___IS LWK-2140 $ 100,000.___)

IT IS AGREED AND CONDITIONED that a certificate signed by the Beneficiary at any time hereafter setting forth that the said bond has been declared forfeited or that a loss, damage, expenditures or liability has been sustained by the Beneficiary on account of the aforesaid Undertaking; the date or dates and amount or amount of such loss, damages, expenditures and/or liability; that payment has been demanded of the party or parties on whose behalf the aforesaid Undertaking was or is about to be executed; and that such loss, damages, expenditures or determined liability has not been paid to the Beneficiary, shall be conclusive and binding on the Trustor, and shall be the warrant of the Trustee to proceed forthwith to foreclose and sell upon the security herein, and from the proceeds of sale (after deducting expenses including cost and search of evidence of title) pay to the Beneficiary the amount so certified, including interest at ten percent per annum from demand to date of payment and attorney's fees.
IT IS FURTHER AGREED THAT: UPON Delivery of said certificate to Trustee, Beneficiary may declare all sums or obligations secured hereby due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be duly filed for record.
IT SHALL BE DEEMED SUFFICIENT if proceedings to foreclose and sell the security herein are executed by anyone of the above-named Trustees and it shall be deemed sufficient if a full reconveyance is executed by any of the above-named Trustees; and, said one Trustee shall be deemed to be the attorney-in-fact for the other Trustees for those purposes. That authority thus granted herein shall be deemed to be coupled with an interest and shall not be affected by the death or incompetence of any of the Trustees for whom such one Trustee shall be acting.
THE UNDERSIGNED TRUSTOR REQUESTS that a copy of any notice of default and of any notice of sale hereunder be mailed to him at this mailing address opposite his signature hereto. Failure to insert such address shall be deemed a waiver of request hereunder for a copy of such notices.

| SIGNATURE OF TRUSTOR | STREET AND NUMBER | CITY | STATE |
|---|---|---|---|
| _Josephine D. Cleveland_ | 908 Paradise Knoll Ct. N.C. | CA | 91950 |

STATE OF CALIFORNIA
COUNTY OF ___SAN DIEGO___ ss.    On ___APRIL 6, 2007___ before me ___MARY ANN ZINGL___, Notary
Public, personally appeared ___JOSEPHINE D. CLEVELAND___ to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity (ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. WITNESS my hand and official seal

Signature ___Mary Ann Zingl___

MARY ANN ZINGG
Commission # 1440040
Notary Public - California
San Diego County
My Comm. Expires Oct 18, 2007
(SEAL)

11739

# NOTARY SEAL CERTIFICATION

(Government Code 27361.7)

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

Name of the Notary: _MARY ANN ZINGG_

Commission Number: _1440060_ Date Commission Expires: _10/15/2007_

County Where Bond is Filed: _San DIEGO_

Manufacturer or Vendor Number: _NNAI_
(Located on both sides of the notary seal border)

Signature: _Ofelea Rodriguez_
Firm Name  (if applicable)

Place of Execution: **San Diego**     Date: _7 / 24 / 2007_

Rec. Form #R10.1 (Rev. 6/11/03)

Recording Requested by
Josephine Cleveland

and when recorded, please return this deed
and tax statements to
Josephine D Cleveland
C/O Non-Domestic 908 Paradise Knoll Court
Near National City California [91950]
North America

Use the above mailing location EXACTLY as
printed

(DTT=0)     **10650**        557-220-5c

DOC # 2008-0107003

FEB 29. 2008     2.18 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J SMITH  COUNTY RECORDER
FEES       52 00
           0C           0C

**PAGES:**        9

Documentary Transfer Taxes=0 and Fees do not apply to this Grant of Land because such charges do not apply to Land transferred by the United States government or by its authority as granted through their Land Patents and because there can be no price or cost attributed to such a Land Patent secured Grant as is made by this Quit Claim Deed, APN#557-220-59, the Land is Private not Public

## QUITCLAIM DEED

*No consideration Exchange*
*for*

The Definition of Land as used in this document is "Land" is not restricted to the earth's surface, but extends below and above the surface  Nor is it confined to solids, but may encompass within its bounds such things as gases and liquids  Ultimately "land" is simply and area of three dimensional space    Land is immovable, as distinct from chattels, which are moveable, it is also, in its legal significance, indestructible  The contents of the space may be severed, destroyed or consumed, but the space itself, and so the "land", remains immutable '       Peter Butt, Land Law 9(2ⁿᵈ ed  1988) Reprinted in Black's Law Dictionary, Seventh Edition

Under the authority of the assigns named in United States of America "United States of America  "Land Patent Rancho De La Nacion" receipt of which is hereby acknowledged,[GRANATOR] "JOSEPHINE D CLEVELAND as the holder of all relevant title secured rights to the Land and property below described, does bring said Land and property out of Equity status together with all the rights, privileges, immunities and appurtenances of whatsoever nature, thereunto belonging and, does hereby remise, release and forever quitclaim the same to  [GRANTEE] Josephine D  Cleveland (a sovereign Woman), in her  private natural At Law status as Land and property owner
Said Land and property is located within original jurisdiction boundaries of "San Diego", "California", as described as

"Those portions of Land within "Land Patent Rancho De La Nacion" Within the Township Seventeen South (17S) of Range Two West (R2W) of the San Bernardino Base and Meridian in California; Located at and including  "Lot 5 of Paradise Knoll, in the city of National City, County of San Diego, State of California, according to map thereof No  14269, filed in the office of the county recorder of San Diego County, September 11, 2001  Also know as 908 Paradise Knoll Court, National City, California 91950

This Deed serves as notice to all that may have concern that the above described Land is secured and protected under said "Land Patent" all relevant documents are certified and in the private possession of "Patentee" and are only viewable by appointment

Done and dated _____, now, and nunc pro tunc on the date of the underlying

Signed  *Josephine D. Cleveland*
        JOSEPHINE D CLEVELAND (A Trust)

Date  02-29-08   Signature _____

Date  _____   Signature _____

State of California
County of RIVERSIDE          ) ss

On 29FEB08 before me, ERIC C. CARLSON, Notary Public (name and title of the officer), personally appeared JOSEPHINE D CLEVELAND, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature _Eric C. Carlson_        (Seal) California



ERIC C. CARLSON
Commission #1668520
Notary Public – California
Riverside County
My Comm Exp May 20 2010

10651

# California all purpose
# Certificate of Acknowledgment

State of California

County of RIVERSIDE }ss

On 29 FEB 08, ERIC C. CARLSON, Notary Public before me, personally
___Date___    (Here insert name and title of the officer)

appeared JOSEPHINE CLEVELAND _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature_____
    Signature of Notary Public

(Notary Seal)

ERIC C. CARLSON
Commission #1668520
Notary Public – California
Riverside County
My Comm Exp May 20 2010

---

**OPTIONAL SECTION**
**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document_____

Document Date_____ Number of Pages_____

**CAPACITY(IES) CLAIMED BY SIGNER**

Name of Signer_____

Title(s) _____

Signer is Representing _____

2008 New California Acknowledgment    909 517.3553/ 714 639 1165   www.Socalnotaryclasses com

Josephine D Cleveland

**10652**

and when recorded, please return this deed
and tax statements to
Josephine D Cleveland
C/O Non-Domestic 908 Paradise Knoll Court
Near National City California [91950]
North America

Use the above mailing location EXACTLY as

## DECLARATION OF ACCEPTANCE

OF LAND PATENT ASSIGMENT
UNITED STATES OF AMERICA "Rancho De La Nacion Patent'
--------*--------

KNOWN ALL MEN BY THESE PRESENTS That, Josephine D Cleveland (a sovereign Woman),, does hereby certify and declare as follows  That she accepts the assignment of all Rights pertaining to the described Land and property including but not limited to the Land Patent secured rights within the United States of America

    **(1) The Land Patent Secured Land·  The Character of said Land and property so secured by said Land Patent, together with all the rights, privileges, immunities and appurtenances of whatsoever nature thereunto belonging, is here legally described and referenced as**
"Lot 5 of Paradise Knoll, in the city National City, County of San Diego, State of California, according to Map thereof No 14269, filed in the office of the County Recorder of San Diego County, September 11, 2001 Located at Township  Seventeen South (17S), Range Two West (2W)

    (2) NOTICE AND EFFECT OF A LAND PATENT  "A grant of land (Land Patent) is a public law standing on the statue books of the State, and is notice to every subsequent purchaser under any conflicting sale made afterward " Wineman v Gastrell, 53 FED 697 , 2 U S  App 581  A patent alone passes title to the Grantee  Wilcox v  Jackson  12 PET (U S ) 498, 10 L Ed 264  All questions of fact decided by the General Land Office are binding everywhere and injunctions and mandamus proceedings will not lie against it  Litchfield v  Register, 9 Wall (U S ) 575, 19 L Ed 681
    Where the United States has parted with title by a patent legally issued and upon surveys legally made by itself and approved by the proper department, the title so granted cannot be impaired by any subsequent survey made by the government for its own purposes  Cage v  Danks, 13 L A  ANN  128
    (3) LAND TITLE AND TRANSFER  The existing system of land transfer is a long and tedious process involving the observance of many formalities and technicalities, a failure to observe any one of which may defeat title, even where these have been traced to its source, the purchaser must but at peril, there always being, in spite of the utmost care and expenditure the possibility that his title may turn out bad  Yeakle, Torrens System 209
    If said assignment of related Land Patent is not properly challenged within sixty days (60)  in a court of law, it stands as a certainty, because no other party has followed the proper steps to secure lawful title  The final certificate or receipt acknowledging the payment in full by a homesteader or Preemptor is not in legal effect a conveyance of land  U S  v  Steenersen, 50 FED 504, 1 CCA 552, 4 U S  App  332
    Wherefore, said Land Patent secured Rights stand as assigned forever secured in accord with the terms set in said Land Patent signed and sealed under the signature of the President of the United States of America

Signed  _Josephine  D  Cleveland_ /All Rights Reserved
      Josephine D Cleveland (a sovereign Woman),

Date _____     Signature _____

Date _____     Signature _____

State of California
County of _RIVERSIDE_

On _29 FEB 08_  before me, _ERIC C CARLSON_ , _Notary Public_ (name and title of the officer),
personally appeared  _JOSEPHINE D CLEVELAND_ _____  personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by he/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____     (Seal)

ERIC C. CARLSON
Commission #1668520
Notary Public – California
Riverside County
My Comm Exp May 20 2010

10653

# California all purpose
# Certificate of Acknowledgment

State of California

County of RIVERSIDE }ss

On 29FEB08    ERIC C. CARLSON, NOTARY PUBLIC    before me, personally
    Date             (Here insert name and title of the officer)

appeared JOSEPHINE CLEVELAND , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____
    Signature of Notary Public

       (Notary Seal)

ERIC C. CARLSON
Commission #1668520
Notary Public – California
Riverside County
My Comm Exp May 20 2010

---

**OPTIONAL SECTION**
**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document _____

Document Date _____ Number of Pages _____

**CAPACITY(IES) CLAIMED BY SIGNER**

Name of Signer _____

Title(s) _____

Signer is Representing: _____

---

2008 New California Acknowledgment   909 517.3553/ 714 639 1165   www.Socalnotaryclasses.com

10654

Dr. le Macaw    The United States of America,

To all to whom these Presents shall come Greeting

Whereas, it appears from a duly authenticated transcript
filed in the General Land Office of the United States
pursuant to the provisions of the Act of Congress approved the
third day of March, one thousand eight hundred and fifty,
entitled "An Act to ascertain and settle the Private Land
Claims in the State of California, Juan Forster as claimant filed a
petition on the Sixth day of November 1852, with the Commissioners
to ascertain and settle the Private Land Claims in the State of
California, Sitting as a Board in the City of San Francisco, in
which petition he claimed the confirmation of his title to a tract
of land known and designated as the Rancho de La Nacion, contain-
ing Six Square Leagues, and situated in the County of San Diego,
State aforesaid, said claim being founded on a Mexican Grant
to said claimant, made on the eleventh day of December one thou-
sand eight hundred and forty five, by Pio Pico, provisional Gov-
nor of the Californias,

And Whereas, the Board of Land Commissioners aforesaid
on the twentyfourth day of October one thousand eight hundred and
fiftyfour, rendered a decree of confirmation in favor of the claim-
ant, which decree on decision as appears by a certified trans-
cript on file in the General Land Office, was, on appeal af-
firmed by the District Court of the United States for the South-
ern District of California, at the December Term, 1856, of said
Court as follows:

Juan Forster

Appellee

are

The United States

Appellants

This cause coming on to be heard on appeal
from the decision of the United States Board of Land Commis-
sioners to ascertain and settle the private land claims in the State
of California, under an Act of Congress approved March 3d, 185_

JAN 0 3 2008
CERTIFIED TRUE COPY
MICHAEL HALL
CHIEF, INFORMATION SECTION
CERTIFICATE OF STATE OF CALIFORNIA
RECORDS MANAGEMENT

10655

Now Know Ye that the United States of America
in consideration ... to increase and pursuant to the
provisions of the Act of Congress aforesaid of 3rd March
1851, Have Given and Granted, and by these presents
Do Give and Grant unto the said Juan Forster, and
to his heirs, the tract of land embraced and described
in the foregoing Survey, but with the Stipulation, that in
virtue of the 15th Section of the said Act, the confir-
mation of the said claim and this patent, shall not
affect the interests of third persons.

To Have and to Hold the said tract with the appur-
tenances, unto the said Juan Forster and to his heirs
and assigns forever, with the Stipulation aforesaid. ...

In testimony Whereof I, Andrew Johnson,
President of the United States, have caused these Letters
to be made Patent and the Seal of the General
Land Office to be hereunto affixed.

Given under my hand at the
City of Washington this thirty ...th
day of February in the Year of our
Lord one thousand eight hun-
dred and Sixty Six, and of the
Independence of the United
States the ninetieth ...

(S S)

By the ... ... , ... ...
... Edw. D. Neill Secretary

... Drost Oakes, ... of the ...
... ... ...

## CERTIFICATION PURSUANT TO GOVERNMENT CODE SECTION 27361.7

*Chula Vista*
_____
Place of Execution

I certify under penalty of perjury that this material is a true copy of the original material contained in this document.

_2|29|08_____          _____
Date                                                  Signature of Declarant

_Josephine D. Cleveland_____
Type or Print Name

4/94

The United States of America,

    To call whom these Presents shall come, Greeting Whereas, it appears from a duly authenticated handscript, suit filed in the General Land Office of the United States, that pursuant to the provisions of the Act of Congress approved the third day of March, one thousand eight hundred and entitled An Act to ascertain and settle the Private Land claims in the State of California, "Juan Forster as claimant filed his to ascertain and settle the Private Land, claims in the State of California, setting as a Board in the City of San Francisco, in which petition he claimed the confirmation of his title to a land know and designated as the Rancho de la Nacion, containing six square miles and situated in the County of San Diego State aforesaid,and claim being founded on a Mexican Grant to said claimant, made on the eleventh day of December, one thousand eight hundred and forty five, by Pio Pico, provisional Governor of the Californias,

    And whereas , the Board of Land Commissioners aforesaid on the twenty fourth day of October one thousand eight hundred and fifty four , rendered a decree as appears by a certified handscript on file in the General Land Office, was, on appeal affirmed by the District Court of the United States for the Southern District of California, at the December Term, 1856 of said Court , as follows

    This cause coming on to be heard an appeals from the Decision of the United States Board of Land Commissioners to ascertain and settle the private land claims in the state on a Transcript of the proceedings, and decision of said Board and the papers and evidence, upon which said decision was founded, and it appearing to the Court that said Transcript and the    of Appeal have duly filed according to law and counsel for the respective parties having been heard "It is Ordered, adjudged and decreed that the decision of said Board of Commissioners be and the same in hereby affirmed " And it is further adjudged and decreed that the title of the Appiles to the land called Rancho de la Nacion, claimed in this case is judged and sealed the same is hereby confirmed to him to the exist of six square leagues of land and no more, within the boundaries described in the grant and in the to which the grant refers, to on the South East the Juan de San Miguel, on the South west the place called "Challe" and on the Tenth West the ocean, Provided that should the quantity of land within said boundaries be up than six square leagues , those confirmation is hereby made of Juan lip quantity"

    "And whereas, under the 13th Section of said Act of 3[rd] March 1851, there have been founded to the Commissioner of the General Land Office a plat and certificate of the Survey of the tract of land, confirmed as aforesaid authenticated on the 2 day of August 1858, by the signature of the Surveyor General of the Public Land in California, the requirements of the Act of approved 14th June 1860 in regard to the publication of Surveys having been compiled with in this case, which Plot and certicates are the words and figures following to wit " United States Surveyor Gen Office San Francisco, California" under and by virtue of the provisions of the 13th section of the Act ending the 13th of June eighteen hundred and fifty three and for the other purposes, and in consequences of a certificate of the United States District Court for the Southern District of California of which a copy is annexed, having been filed in this office , whereby it appears that the Attorney General of the United States having given notice that it was not the intention of the United States to presents the Appeal from the decision of the said District Court, by which it recognized and confirmed,the title and clause of Juan Forster to the tract of land designated as Rancho de la Nacion, containing six square leagues, the said appeal has been located by the said District Court, and therby the said decision if favor of been surveyed in conformity to the grant thereof and the said decision,

"And I do hereby certify the annexed map to be a time and accurate plat of the said tract o0f land, as appears by the field notes of the survey thereof, made by John G Hays, Deputy Surveyor in the North of June 1855, under the directions of this office, which having been examined and approved are now filed herein, "And I do further certify that under and by virtue of the said confirmation and survey, the said Juan Forster is entitled to the General Land Office, for the said tract of land , the same Beginning of the post marked N  North in the mound of earth, on the margin the Bay of San Diego, the same being the South West corner of the Pueblo land of San Diego

Thence measuring the Bay of San Diego according to the ten thirty minutes East , South fifty five degrees East forty three claims the station

Thence, south five degrees fifteen minutes west, sixty three claims to station

Thence, south six degrees thirty minutes east, twenty seven claims to station

**EXHIBIT 10**

1   Randall D. Naiman, Esq. – State Bar No. 81048
    NAIMAN LAW GROUP, PC
2   4660 La Jolla Village Drive, Suite 500
    San Diego, California 92122
3   (858) 535-4808 (telephone)
    (858) 535-4809 (facsimile)
4   Randall@NaimanLaw.com (e-mail)

5   Attorney for Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE
    FOR NEW CENTURY

6

7

8                SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                            SOUTH COUNTY DIVISION

10

11  DEUTSCHE BANK NATIONAL TRUST       )   Case No.: 37-2008-00030649-CL-UD-SC
    COMPANY, TRUSTEE FOR NEW           )
12  CENTURY                            )   [PROPOSED] ORDER GRANTING
                                       )   PLAINTIFF'S MOTION FOR SUMMARY
13              Plaintiff,             )   JUDGMENT AND JUDGMENT
                                       )   THEREON
14       vs.                          )
                                       )   [Filed concurrently with Notice of Motion
15                                     )   and Motion for Summary Judgment,
    JOSEPHINE D. CLEVELAND; and        )   Statement of Facts and Memorandum of
16  DOES 1 to 6, inclusive             )   Points and Authorities in Support of
                                       )   Motion for Summary Judgment by Plaintiff,
17                                     )   Plaintiff's Separate Statement of
                                       )   Undisputed Facts and Supporting
18              Defendants.            )   Evidence on Motion for Summary
                                       )   Judgment, and Declarations of Yolanda
19                                     )   Medina and Rene Lozano in Support of
                                       )   Motion for Summary Judgment by Plaintiff
20
21                                         Date:  April 18, 2008
                                           Time:  9:30 a.m.
22                                         Dept:  2
                                           Action filed: March 26, 2008
23                                         Trial date: None assigned
24       Plaintiff's DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE FOR
25  NEW CENTURY motion for summary judgment having come regularly for hearing before
26  the above-entitled court, on the date above-mentioned, and the court having reviewed the
27  motion and supporting documents submitted in support of said motion, and any
28  opposition thereto, having determined that there are no material facts in dispute nor

                                           1

FILED
SAN DIEGO SUPERIOR COURT

APR 1 8 2008

CLERK OF THE SUPERIOR COURT

BY _____ R. PICHE

1   triable controversies with respect to the ownership of the subject real property located at

2   908 Paradise Knoll Court, National City, California 91950 ("Property") and termination of

3   all tenancies, and proof satisfactory to the court having been made that title to the

4   Property has been duly perfected in the name of Plaintiff DEUTSCHE BANK NATIONAL

5   TRUST COMPANY, TRUSTEE FOR NEW CENTURY, by virtue of a Trustee's Deed

6   Upon Sale, recorded in the Official Records for the County of San Diego and the Property

7   was therefore acquired in accordance with Section 2924 of the California Civil Code, and

8   further proof having been made that the Defendant, and each of them, have been duly

9   served with a Notice to Vacate pursuant to Code of Civil Procedure section 1162 and said

10  Defendant(s) have remained in possession of the Property after the expiration of the

11  Notice to Vacate, and accordingly, unlawfully detain the Property in violation of Code of

12  Civil Procedure section 1161a and the court having concluded that possession of the

13  Property should be restored to Plaintiff and good cause appearing,

14      IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that Plaintiff,

15  DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE FOR NEW CENTURY,

16  shall have and recover from Defendant Josephine D. Cleveland and All Unknown

17  Occupants who may claim an interest in possession of the subject property located at

18  908 Paradise Knoll Court, National City, California 91950 the restitution and possession

19  of the Property.  A Writ of Possession for the Property shall be issued forthwith. This

20  Court declines to determine the issue of damages and costs in this matter.

21      IT IS SO ORDERED.

22  Dated:   APR 1 8 2008

23                                    DIANNE K. O'CONNOR, COMM.
                                      JUDGE OF THE SUPERIOR COURT
24
25
26
27
28

2

[PROPOSED] ORDER AND JUDGMENT

TOTAL P.03

Case 3:08-cv-00802-JM-NLS    Document 34    Filed 09/10/2008    Page 62 of 64
05/06/2008  11:49    010 203  009              LAW OFFICES                                    PAGE  02/02
858 535 4805          Naiman Law Group        NAIMAN LAW GROUP, PC        01:90:03 p.m,    05-05-2008        7/9

37-2008- 00030149 11

**[PROPOSED] ORDER**

IT IS HEREBY ORDERED:

The *ex parte* application of Movant Josephine D. Cleveland ("Movant") to stay execution of the judgment is DENIED.  The San Diego County Sheriff's Department shall proceed forthwith with the lock-out of Movant and All Unknown Occupants at the residential property located at 908 Paradise Knoll Court, National City, CA  91950 as set forth in the Writ of Possession.  No further posting of the eviction notice shall be required and no further stays shall be granted.  The clerk of the court shall forthwith deliver this Order to the San Diego County Sheriff's Department.

Dated: May 6, 2008

_____
JUDGE/COMMISSIONER OF THE SUPERIOR COURT    Gary S. Bloch, Commissioner

1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOVANTS' EX PARTE APPLICATION TO STAY EXECUTION OF JUDGMENT

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **ADORNO YOSS ALVARADO & SMITH, 1 MacArthur Place, Santa Ana, CA 92707.**

On September 10, 2008, I served the foregoing document described as **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS "THIRD AMENDED COMPLAINT"** on the interested parties in this action.

☒    by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒    **BY REGULAR MAIL:** I deposited such envelope in the mail at 1 MacArthur Place, Santa Ana, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐    **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐    **BY OVERNIGHT MAIL:** I deposited such documents at the Overnite Express or Federal Express Drop Box located at 1 MacArthur Place, Santa Ana, California 92707. The envelope was deposited with delivery fees thereon fully prepaid.

☐    **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☐    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒    (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 10, 2008, at Santa Ana, California.

/s/ Veronica Delgado
_____
Veronica Delgado

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA

1054336.1

1

**SERVICE LIST**
**Josephine Cleveland v. Deutsche Bank, et al.**
2
**USDC-Southern District Case No. 08CV0802JM-NLS**

3

4    Josephine Cleveland
     908 Paradise Knoll Court
5    National City, CA 91950                              **Plaintiff in Pro Per**

6

7

8

9

10

11

ADORNO YOSS ALVARADO & SMITH
ATTORNEYS AT LAW
SANTA ANA    12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1054336.1